## Bogert, Appellant, *v.* Allentown Housing Authority.

Argued October 3, 1966. Before Bell, C. J., Mus-manno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*Joseph L. Rosenfeld,* for appellant.

*James N. Diefenderfer,* for appellees.

OPINION BY MR. JUSTICE JONES, June 29, 1967:

On December 8, 1964, seventy property owners and taxpayers of the City of Allentown, [plaintiffs], instituted an equity action against the Allentown Housing Authority,[1] [Authority], in the Court of Common Pleas of Lehigh County. The gravamen of their complaint, as drawn, was stated by the court below: "The complaint, containing eighteen prayers for relief, in essence centers around the proposed construction of public housing in the Sixteenth Ward of the City of Allentown. The relief sought may be classified as follows: (1) an injunction to restrain the defendants from further proceeding in regard to the proposed housing, (2) that the defendants be compelled to disclose the extent to which the plaintiffs and other residents of Allentown have become obligated by reason of the preliminary negotiations in regard to the proposed housing, (3) that an investigation be conducted to determine whether the plaintiffs and other residents of Allentown have been prejudiced, obligated or harmed by any action of the defendants and that they be compelled to disclose the amount of monies expended to facilitate preliminary negotiations, (4) that all conveyances to which the defendants have been a party be set aside, (5) that the defendants be restrained

---

[1] Created under the Housing Authorities Law of May 28, 1937, P. L. 955, as amended, 35 P.S. §1541 et seq.

from exercising the power of eminent domain and, (6) that the Court declare the Housing Authorities Act unconstitutional."[2]  The Authority filed preliminary objections including a "motion for a more specific pleading", a pleading in the nature of a demurrer and a "petition raising defense of lack of capacity to sue".[3] The court below sustained that portion of the preliminary objections in the nature of a demurrer and dismissed the complaint. From that decree the instant appeal was taken.

The rationale of the court below was that (1) in the absence of any allegation of arbitrary or capricious acts or conduct on the part of the Authority, the action of the Authority would not be subject to judicial restraint, (2) relying on *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 109 A. 2d 331 (1954),[4] the Authority was not under a duty to hold a public hearing and that, "even if official action had been taken by the Authority at a 'non-public' meeting such action would not be invalid" and, (3) inasmuch as the court was convinced that the plaintiffs in their complaint had "pleaded their best case", permission to file an amended complaint would be "fruitless".

Plaintiffs' complaint is obviously inartistically drawn and does not set forth a valid cause of action. To this extent we agree with the court below.

However, we believe that the court fell into error in denying to the plaintiffs an opportunity to amend their complaint. As argued in its brief and as evident during the oral argument, the Authority takes the

---

[2] The constitutionality of this statute was upheld in *Dornan v. Phila. Housing Authority,* 331 Pa. 209, 200 A. 834 (1938).

[3] Cf. *Price v. Philadelphia Parking Authority,* 422 Pa. 317, 325-329, 221 A. 2d 138 (1966).

[4] It must be noted that *Blumenschein* was decided three years prior to the passage of the so-called "Right to Know" Act of June 21, 1957, P. L. 392, as amended, 65 P.S. §251 et seq.

position that it is not subject to the provisions of the "Right to Know" statute of 1957, supra. In support of its position the Authority—and the court below—relies upon *Blumenschein,* supra, and the Housing Authorities Law, supra, §10(y), 35 P.S. §1550(y). Section 10(y) grants to the Authority the power, inter alia: "(y) To conduct examinations and investigations and to hear testimony and take proof, under oath or affirmation, *at public or private hearings,* on any matter material for its information." (Emphasis supplied). This Court, in passing upon the contention that the "Authority held no public or private hearings in connection with the selection of [a] site" and construing Section 10(y), in *Blumenschein* stated: "The *power* thus granted is not a *mandate.* There is no provision in the law as to the manner in which the Authority is to gather the information upon which to base its action, nor is there any constitutional or other legal requirement that a landowner be granted a hearing before a governmental agency vested with the right of eminent domain determines to take his land for a public use" (p. 574). *Blumenschein* is clearly distinguishable from the instant situation: (a) the factual situation therein was entirely different and (b) since the date of the decision in *Blumenschein,* the right of citizens and taxpayers to ascertain what public bodies are doing has been greatly expanded through legislative passage of the "Right to Know" statute.

Under the "Right to Know" statute, the legislature has mandated that: "Every public meeting of a board shall be open to the public." (Act of 1957, supra, §2, as amended, 65 P.S. §252). An "authority" is *expressly* included within the term "board". (Act of 1957, supra, §1, as amended, 65 P.S. §251). In ascertaining whether a meeting is a "public meeting", the legislative criterion is that it be "part of any meeting" at which the board takes "official action" dealing "with

the receipt, borrowing or disbursement of funds or the acquisition, use or disposal of services or of any supplies, materials, equipment or other property or the fixing of personal or property rights, privileges, immunities, duties or obligations of any person or group of persons. . . ." The sole exception drawn by the statute is a "meeting, the publication of the facts concerning which would disclose the institution, progress or result *of an investigation* undertaken by a board in the performance of its official duties." (Act of 1957, supra, §1, as amended, 65 P.S. §251). (Emphasis supplied). A violation of this statute exposes any member of the board to a fine upon a summary conviction thereof.

The instant record is sparse and somewhat confusing. However, it is averred that the Authority proposes the construction of public housing in the Sixteenth Ward of Allentown, that the plaintiffs, having informally heard of an Authority meeting to be held on October 21, 1964, requested their counsel to attend such meeting, that plaintiffs' counsel did attend the meeting and stated to the members of the Authority the reason for his presence, counsel was requested to leave the meeting and was informed that no member of the public was permitted to attend meetings of the Authority. The court below emphasized the fact that the complaint failed to aver what action the Authority took on October 21, 1964, or at any other time. The explanation for the absence of any such averment is clear: the Authority would not permit the plaintiffs or their counsel to ascertain what the Authority had done, what it was doing or what it contemplated doing in the future. The Authority was adamant in denying the disclosure of its actions, past and contemplated, consummated or planned and proposed, to the public, including the plaintiffs.

It is clear beyond question that plaintiffs' failure to set forth a cause of action, if any existed, arose from the refusal of the Authority to afford them and their counsel an opportunity to ascertain and know what the Authority had been doing and what it contemplated doing in connection with the proposed housing project. It is in this respect that the "Right to Know" statute becomes relevant and of importance in this litigation. While the statute provides a remedy against the members of the Authority for a violation thereof such remedy is not exclusive; were it otherwise, the entire purpose of the statute would be nullified and the statute could be violated by members of the Authority with particular impunity. In order to require the Authority to live up to the mandate of the "Right to Know" statute plaintiffs had to resort to equity or other appropriate remedy.

We disagree with the court below in its view that the *immediate* "objective of the plaintiffs [was] to request from the Court a substitution of its views with respect to the location of a site for public housing." The *immediate* need was for a disclosure of that which the Authority had done and that which the Authority contemplated doing in connection with the proposed construction of public housing in the Sixteenth Ward of the City of Allentown. Until such disclosure was made it could not be determined whether the actions of the Authority were arbitrary and capricious and thus amenable to judicial restraint or whether its actions were such as placed it beyond judicial restraint. See: *Blumenschein*, supra; *Hyam v. Upper Montgomery Joint Authority*, 399 Pa. 446, 160 A. 2d 539 (1960).

In *Posternack v. American Casualty Co. of Reading*, 421 Pa. 21, 24, 218 A. 2d 350 (1966), we recently said: "It has long been the law in this Commonwealth that an amendment to the pleadings is a matter of judicial

discretion: Yentzer v. Taylor Wine Co., Inc., 409 Pa. 338, 186 A. 2d 396 (1962). By the same token, it is equally well established that such amendments should be liberally allowed except where surprise or prejudice to the other party will result, or where the amendment is against a positive rule of law. See, Schaffer v. Larzelere, 410 Pa. 402, 189 A. 2d 267 (1963), and Kilian v. Allegheny Co. Dis., 409 Pa. 344, 185 A. 2d 517 (1962)."

It appears that the court below, in an ancillary proceeding, has directed the Authority to make available to the plaintiffs certain designated records of the Authority. Upon the basis of an examination of such records the plaintiffs will be able to ascertain what the Authority has been doing and what it contemplates doing. After such examination, the plaintiffs may *or* may not be able to set forth a cause of action against the Authority to restrain its actions. Since the inability to set forth a sufficient cause of action in the original complaint was clearly thwarted by the Authority's refusal of disclosure to the plaintiffs of its actions, past or contemplated, in violation of the statutory mandate expressed in the "Right to Know" statute, the court below should have given the plaintiffs an opportunity to amend their complaint upon such disclosure made. The action of the court below in refusing this opportunity, in view of *the peculiar and unique circumstances* on this record, was an abuse of its discretion.

Within the past several decades we have witnessed the creation of these public bodies called "authorities" which have been granted the power to, and do, perform important governmental functions which vitally affect the public. Unlike other public bodies, the members of the "authorities" are appointed and not elected and are not *directly* responsible for their actions to the

electorate. If the elected members of public bodies are to be subjected to public disclosure of their actions, how much more important that the appointed members of public bodies be required to make such disclosure. The attitude of the instant Authority in refusing public attendance at public meetings and in refusing disclosure of its actions cannot be condoned. It may well be that their actions in connection with this project have been proper and in the public interest and not arbitrary or capricious. However, until such actions are fully disclosed, the propriety of such actions cannot be determined.

In our view, on the basis of the records of the Authority now disclosed to the plaintiffs, the plaintiffs may *or* may not have a cause of action against the Authority. We in nowise pass upon the merits of this controversy. We simply decide and determine that the plaintiffs must be given an opportunity to amend their complaint to show, *if they can,* such actions on the part of the Authority as would subject the Authority to judicial restraint.

Decree reversed and the matter remanded to the court below for the purpose of permitting the plaintiffs to amend their complaint, if they now so desire. Costs on plaintiffs.